IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

JEFFREY SEMLER, )
 )
 Plaintiff, )
 )
vs. ) Case No. CIV-11-1354-D
 )
GEICO GENERAL INSURANCE )
COMPANY, )
 )
 Defendant. )

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 65], which Plaintiff has timely opposed. The Motion is fully briefed and at issue.[1]

**Factual and Procedural Background**

Plaintiff Jeffrey Semler asserts claims for breach of contract and breach of an insurer's duty of good faith and fair dealing related to an automobile insurance policy issued by Defendant GEICO General Insurance Company.[2] Specifically, Plaintiff claims entitlement to uninsured motorist ("UM") coverage of $100,000 for injuries suffered on August 25, 2010, when he was involved in a single-car collision caused by swerving his vehicle to avoid a large-sized tire tread lying on a highway, apparently left by a semi-trailer truck. Plaintiff also claims Defendant acted in bad faith by failing to properly investigate, evaluate, and pay his UM claim. Defendant admits its insurance policy provided $100,000 of UM coverage, but denies that Plaintiff's accident was caused by an

---

[1] Plaintiff filed a timely response [Doc. Nos. 69], later supplemented with exhibits [Doc. No. 75], and was subsequently permitted to file an amended response brief [Doc. No. 84 (sealed)]. Defendant filed a timely reply brief [Doc. No. 76], and later filed an amended reply brief [Doc. No. 88 (sealed)].

[2] Plaintiff filed suit in the District Court of Canadian County, Oklahoma, and Defendant timely removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332.

uninsured motor vehicle as defined by the policy or that Plaintiff had a valid UM claim. Defendant also contends a legitimate dispute regarding UM coverage under novel circumstances precludes a bad faith claim. Defendant moves for summary judgment in its favor on both claims.[3]

**Standard of Decision**

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*.

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). A district court has discretion to go beyond the cited materials and consider other materials in the record, but it is not required to do so. *See Adler*, 144 F.3d at 672; Fed. R. Civ. P. 56(c)(3). The court's inquiry is whether the facts and evidence of record present "a sufficient

---

[3] With its answer, Defendant asserted a counterclaim for a declaratory judgment that it has no duty to provide UM coverage to Plaintiff under the facts presented in this case. However, Defendant's Motion does not request summary judgment on its counterclaim.

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**

The relevant facts are substantially undisputed. On August 25, 2010, Plaintiff was driving his insured vehicle, a 2005 Ford Expedition, on Highway 3 in Canadian County, Oklahoma, between dusk and 11:00 p.m. It was a clear night, and Plaintiff was traveling at a lawful speed of 65 miles per hour in the outside lane of a four-lane divided highway, using his high-beam headlights and cruise control. As he approached a bridge, Plaintiff noticed a large tire tread in his lane of travel; Plaintiff has testified it "looked to [him] like an 18-wheeler tire out in the road." *See* Semler Dep. 18:1-2. Plaintiff attempted to avoid the object by swerving to the right, but his vehicle struck the tire tread. Plaintiff lost control of his vehicle and collided with a wall of the bridge.

Plaintiff and other witnesses later confirmed that the object was a large piece of tire debris, described as the "skin" or "outside tread," or "a gator tail," that appeared to have separated from a semi-truck tire. *See* Pl.'s Resp. Br., Ex. 16 [Doc. No. 75-18], Statement of David Craig[4] 4:8-11, 7:8-13; Statement of Dallas Edwards 14:3-9. However, neither Plaintiff nor any other witness saw the tread separate from a truck tire, or saw a particular truck that might have been responsible for its presence on the roadway. Shortly after the accident occurred, an Oklahoma Highway Patrol officer, Trooper Dallas Edwards, responded to the scene and documented the accident by completing a contact report, which states simply that Plaintiff's vehicle came in contact with debris on the roadway and he lost control. *See* Pl.'s Resp. Br., Ex. 9 [Doc. No. 75-11] at 2.

---

[4] The recorded statement misidentifies the witness as David "Crane."

Plaintiff reported the accident to Defendant on August 27, 2010, and submitted a claim for UM benefits through counsel on September 14, 2010. Defendant assigned an employee, Elizabeth Bray, to investigate the claim. Ms. Bray took Plaintiff's recorded statement on December 20, 2010, and the following day informed his attorney, John Branum, "it does not appear that this loss meets the definition of an uninsured motorist claim." *See* Pl.'s Resp. Br., Ex. 5 [Doc. No. 75-7]. Asked to explain this conclusion, Ms. Bray informed Mr. Branum that Defendant had found Plaintiff "was at fault in this loss for failing to maintain control of his vehicle" and because Plaintiff was "100% responsible, he would not be entitled to make an uninsured motorist claim under the policy." *See* Pl's Resp. Br., Ex. 8 [Doc. No. 75-10]. Mr. Branum then provided a copy of Trooper Edward's report, and informed Ms. Bray of Plaintiff's position that the most likely cause of tire debris in the roadway was negligent maintenance of a motor vehicle and the fact the owner was unknown rendered it an uninsured vehicle for purposes of UM coverage. Mr. Branum subsequently informed Ms. Bray about the identity of a witness, David Craig, and the substance of an interview in which Mr. Craig had stated that the debris was a large piece of semi-truck tire retread, that it would have been difficult to see because it was black, and that a reasonable driver would have taken evasive action to avoid hitting it. Following an exchange of correspondence in which Ms. Bray maintained her original position, Mr. Branum provided copies of Mr. Craig's and Trooper Edward's recorded statements by letter dated June 6, 2011. Defendant responded by filing a declaratory judgment action, which it voluntarily dismissed three months later. This lawsuit followed.

The UM provision of the policy issued to Plaintiff provides in pertinent part as follows:

Under the Uninsured Motorists Coverage, we will pay damages for *bodily injury* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* or a *hit-and-run motor vehicle* arising out of the ownership, maintenance, or use of that auto.

4

*See* Def.'s Mot. Summ. J., Ex. 6 [Doc. No. 65-6], Oklahoma Family Automobile Insurance Policy (hereafter "Policy"), at 13 (emphasis in original). The Policy contains the following definitions:

1. *Hit-and-run motor vehicle* is a motor vehicle causing *bodily injury* to an *insured*, and whose owner or operator cannot be identified, provided:

    (a) The *insured* or someone on his behalf reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
    (b) The *insured* or someone on his behalf files a statement with us within 30 days setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and
    (c) The *insured* or someone on his behalf makes available for inspection, at our request, the motor vehicle *occupied* by the *insured* at the time of the accident.

    \*   \*   \*   \*

6. *Uninsured motor vehicle* is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial liability law of the *state* in which the *insured auto* is principally garaged at the time of the accident.

    This term also includes:

    (a) A motor vehicle whose insurer is or becomes insolvent or denies coverage;
    (b) An insured motor vehicle if the liability limits do not satisfy a claim by the insured.

    The term *uninsured motor vehicle* does not include:

    (a) An *insured auto* unless it is an *insured auto* under Section I of this policy and *bodily injury* is excluded;
    (b) A motor vehicle owed or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
    (c) A motor vehicle owned by the United States of America, any other national government, a *state* or a political sub-division of any such government or its agencies; . . . .

*See* Policy, at 12-13 (emphasis in original).

5

Both parties have retained experts during this litigation to provide opinions regarding various subjects, including tire debris on roadways, accident reconstruction, and claims adjustment. Plaintiff relies on his experts' opinions that a commercial driver should know his truck has lost a tire tread, particularly one as large as witnesses described in this case; that the driver has a duty to remove tire debris from the roadway or to notify local emergency officials; that the presence of the tire tread on the highway was the cause of Plaintiff's accident; and that "most likely the tread was there due to lack of or poor tire maintenance." *See* Pl.'s Resp., Ex. 28 [Doc. No. 75-30], Owen Report at 2. Although Defendant's experts disagree with these opinions, and Defendant disputes the significance of a scientific study on which one opinion is based, Defendant has not challenged the admissibility of the experts' opinions. Thus, the Court may consider them for summary judgment purposes.[5]

## Discussion

**A.    Breach of Contract Claim**

Defendant contends Plaintiff cannot establish a right to UM coverage under Oklahoma law, which requires proof of the following elements: "1) the injured person is an insured under the UM provisions of a policy; 2) the injury to the insured has been caused by an accident; 3) the injury to the insured has arisen out of the 'ownership, maintenance or use' of a motor vehicle; and 4) the injured insured is 'legally entitled to recover damages from the owner or operator of the uninsured motor vehicle.'" *Ply v. National Union Fire Ins. Co*., 81 P.3d 643, 647 (Okla. 2003) (footnotes

---

[5] In assessing a Rule 56 motion, "a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kansas, Inc*., 452 F.3d 1193, 1199 (10th Cir. 2006); *see Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006); *see also Thomas v. International Business Mach*., 48 F.3d 478, 485 (10th Cir. 1995). However, because Defendant does not presently contend Plaintiff's expert evidence is inadmissible or that it should be excluded from consideration, this evidence will be considered for summary judgment purposes.

omitted).[6] Specifically, Defendant asserts that Plaintiff lacks sufficient facts to prove the third and fourth elements of his UM claim.

1. **Injury Arising Out of Maintenance or Use of a Vehicle**

Defendant concedes that the Oklahoma Supreme Court has broadly construed the phrase "arising out of . . . maintenance or use" for purposes of UM coverage. *See* Def.'s Mot. Summ. J. [Doc. No. 65] at 10-11 (discussing *Safeco Ins. Co. v. Sanders*, 803 P.2d 688, 691-92 (Okla. 1990); and *Mayer v. State Farm Mut. Auto Ins. Co.*, 944 P.2d 288, 290-91 (Okla. 1997)); *see also Ply*, 83 P.3d at 649-50. The Tenth Circuit has derived from *Safeco* and subsequent cases a four-part test, articulated in *Wallace v. Farmers Ins. Co.*, 83 F.3d 349, 351 (10th Cir. 1996). Defendant challenges the "arising out of" component by asserting that Plaintiff lacks proof of a causal connection between the maintenance or use of a vehicle and his injury. This argument is based primarily on the opinions of Defendant's experts; Defendant ignores the conflicting opinions of Plaintiff's experts. *See* Def.'s Mot. Summ. J. [Doc. No. 65] at 11-12, 13-14. Viewing the record in the light most favorable to Plaintiff, however, and drawing all reasonable inferences in his favor as required by Rule 56, the Court finds that there is a genuine dispute of material fact with regard to this issue, and thus, summary judgment is improper on this basis.

Defendant also presents a "condition versus cause" argument that relates to a component of the *Safeco* test, namely, whether the injury was foreseeable to the original actor or the result of a supervening cause. *See* Def.'s Mot. Summ. J. [Doc. No. 65] at 16-17; *see also Walker*, 83 P.3d at 352. Defendant contends the undisputed facts establish, as a matter of law, that the cause of the

---

[6] Although *Ply* addressed the conditions under which the UM statute, Okla. Stat. tit. 36, § 3636, mandates coverage, the parties assume that the UM provision of the insurance policy in this case is co-extensive with § 3636, and the Court therefore makes the same assumption.

accident was Plaintiff's negligence in failing to drive in a manner that would permit him to avoid a roadway obstruction and failing to recognize and safely avoid the tire tread. *See* Def.'s Mot. Summ. J. [Doc. No. 65] at 18. This argument similarly fails to consider all evidence of record and to draw all reasonable inferences in favor of Plaintiff. Accordingly, the Court similarly finds that a genuine dispute of material fact precludes summary judgment on this basis.

### 2. Legally Entitled to Recover Damages

According to the Oklahoma Supreme Court, "[t]he words 'legally entitled to recover' simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 685 (Okla. 1983). "The phrase requires that 'there must be a tortfeasor, someone who has committed a wrong from which the insured has suffered damages, before uninsured motorist coverage can come into play.'" *Ply*, 81 P.3d at 648 (quoting *Martin v. Hartford Underwriters Ins. Co.*, 918 P.2d 49, 51 (Okla. 1996)). "The issue of fault is determined by the application of legal principles to the facts presented. If an insured can establish that his or her injury was caused by negligence on the part of the owner or operator of an uninsured vehicle, he or she can recover UM benefits." *Id*.

Defendant argues the lack of any evidence to establish how the tire tread came to be lying in the roadway, or who was responsible for leaving it there, prevents Plaintiff from being able to prove a legal right to the recovery of damages from a tortfeasor. Plaintiff responds by arguing that he has presented sufficient facts to establish the unidentified truck driver's fault and liability for damages under several legal theories: a) negligence (including negligence *per se* based on an alleged violation of Okla. Stat. tit. 47, § 11-1110); b) *res ipsa loquitur*; and c) nuisance, as defined by Okla. Stat. tit. 50, § 1.

Regardless of the legal theory asserted, the Court first notes it is undisputed that the owner or operator allegedly responsible for leaving tire debris in the roadway remains unknown. Plaintiff's arguments discuss an "unidentified driver." *See* Pl's Resp. Br. [Doc. No. 69] at 15-18; Pl.'s Am. Resp. Br. [Doc. No. 84] at 15-18. An "unidentified driver" cannot be an uninsured motorist as defined by the insurance policy, and the UM statute, as the operator of an "uninsured motor vehicle." This definition includes vehicles that are not covered by liability insurance, have inadequate coverage to satisfy a claim, or are insured by an insolvent company. *See* Policy at 12, § 4, ¶ 6; *see also* Okla. Stat. tit. 36, § 3636(C). The insured status of an unidentified motor vehicle cannot be determined. Instead, Plaintiff's claim for UM coverage depends on his ability to establish the unidentified truck was a "hit-and-run motor vehicle." *See Brown v. United Servs. Auto. Ass'n*, 684 P.2d 1195, 1201 (Okla. 1984) (hit-and-run provision applies when driver's identity cannot be ascertained; if driver is identified, insured bears burden to prove vehicle was uninsured).

As pertinent here, the policy defines "hit-and-run motor vehicle" to mean "a motor vehicle causing bodily injury to an insured, and whose owner or operator cannot be identified." *See* Policy at 12, § 4, ¶ 1. Consistent with the UM statute as interpreted by the Oklahoma Supreme Court, the term does not require physical contact between the insured vehicle and the hit-and-run vehicle. *See Biggs v. State Farm Mut. Auto. Ins. Co.*, 569 P.2d 430, 433 (Okla. 1977). Under this view, "no 'impact' with the offending car" is required, but the insured bears the burden to prove "that the accident was in fact caused by an unidentified driver." *Id*. at 433-34.

      **a.    Nuisance**

As one means of proving liability of the unidentified driver, Plaintiff relies on Oklahoma's nuisance statute, which encompasses conduct that endangers the safety of others or "obstructs . . . or renders dangerous for passage any . . . highway." Okla. Stat. tit. 50, § 1. Defendant argues that

this statute has no applicability to vehicle drivers, as opposed to property owners. In response, Plaintiff provides no legal authority for the proposition that a driver's conduct may create a nuisance. The Court finds that Plaintiff's nuisance theory is insufficient, by itself, to establish a right to recover damages from the unidentified truck driver.

In *Haas v. Firestone Tire & Rubber Co.*, 563 P.2d 620 (Okla. 1976), a motorist sought recovery from a property owner and the owner of trucks that had tracked mud and dirt onto a roadway adjacent to a construction site. The Oklahoma Supreme Court held that the nuisance statute was inapplicable because the debris on the roadway was not an "obstruction" within the meaning the statute. *See id*. at 625. The court also stated the defendant's tort liability could "only be predicated on a showing of negligence." *Id*. The alleged tort arose "not out of misuse of the property, but rather out of use of the roadway in such a manner as to create a hazard." *Id*. In considering whether the plaintiff could prevail under this theory, the court held that "a person who creates a dangerous condition on the public way by spillage or trackage of mud or debris thereon, has a duty to the general public to either remove the hazard or to give warning in some manner." *Id*. at 626. A failure to perform these duties constitutes negligence. Similarly, in this case, the Court concludes that Plaintiff cannot establish tort liability of the unidentified driver without proof of negligence.

    **b.**  *Res Ipsa Loquitur*

Plaintiff contends that the presence of the tire tread on the roadway is an event from which negligence may be inferred, and liability can be established, under the doctrine of *res ipsa loquitur*. Defendant points to an absence of Oklahoma legal authority utilizing this doctrine to establish UM coverage, and a split of authority from other jurisdictions. Plaintiff concedes the lack of Oklahoma authority, and relies on a policy argument based on Oklahoma's strong protection of insureds and

broad view of UM coverage.[7] Regardless whether the doctrine might be applied in a proper case, the Court finds an insufficient factual basis for its use in this case. The fundamental element of *res ipsa loquitur* negligence is the defendant's "exclusive control" of the instrumentality causing injury. *Deweese v. Patterson UTI Drilling Co.*, 229 P.3d 540, 544 (Okla. 2010). Although described by the Oklahoma Supreme Court as a "flexible concept," the court's interpretation requires "that other reasonably probable causes be sufficiently eliminated by the evidence" or that "the responsibility of the defendant" for the fitness of the instrumentality be sufficiently established. *Id*. In this case, Plaintiff has presented no evidence that would establish the unidentified driver's exclusive control over the tire tread or responsibility for its fitness. Accordingly, this is not a proper case for *res ipsa loquitur*.

### c. Negligence

Plaintiff's proof of negligence consists of the circumstances of the accident, inferences to be drawn from the known facts, and the opinions of his designated experts. Defendant argues that any finding of negligent conduct or causation of the accident would necessarily be based on speculation and conjecture. The Court disagrees. Viewing the summary judgment record in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a minimally sufficient showing to support his theory that the negligence of an unidentified truck driver caused the accident. Plaintiff has submitted facts and evidence from which a jury could reasonably find that an attentive semi-truck driver would have known of the loss of a tire tread as large as the one described by witnesses, that the most likely cause of such a loss was improper maintenance, that the driver had a duty to remove the tire tread from the roadway or notify proper authorities, and that the failure to perform this duty

---

[7] Plaintiff cites only *Khirieh v. State Farm Mut. Auto. Ins. Co.*, 594 So. 2d 1220 (Ala. 1992), a factually distinguishable case in which the court was willing to infer from the existence of a truck bench seat on a busy highway that the person in control of the seat was negligent.

11

resulted in the presence of the tread on an unlit, 65-mile-per-hour highway at night and caused Plaintiff's accident. Such findings could establish that Plaintiff's injuries were caused by the negligent operation of a hit-and-run vehicle, and might entitle Plaintiff to UM coverage under the policy. *See Barr v. Auto Convoy Co.*, 230 P.2d 714, 716 (Okla. 1955) (question of motorist's negligence is whether his actions appeared reasonable in light of the circumstances presented).[8] Therefore, Plaintiff has demonstrated the existence of genuine disputes of material facts regarding his breach of contract claim, and Defendant is not entitled to summary judgment on this claim.

**B.     Bad Faith Claim**

As to Plaintiff's tort claim, the evidence of record clearly establishes the existence of a legitimate dispute regarding Plaintiff's entitlement to UM coverage, thereby precluding a finding of bad faith by Defendant. *See Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000). The evidence on which Plaintiff relies to establish the fault of the unidentified driver is based almost entirely on the opinions of tire and accident reconstruction experts that Plaintiff retained during this litigation. Plaintiff provides no legal authority for the proposition that Defendant's duty to conduct a reasonable investigation encompassed an obligation to retain such experts under the circumstances.[9] The tire debris at issue was discarded by a third party who responded to the accident, and no physical evidence was available for forensic testing. Further, Defendant did engage experts in this case, and the opinions of Defendant's experts are directly contrary to Plaintiff's position. They provide ample support for Defendant's position that no fault of an unidentified truck driver or vehicle owner can be

---

[8] Of course, a reasonable jury could also reject these findings, or could also find Plaintiff was negligent by "driving in excess of a speed which would have allowed him to stop within the distance of his headlights." *See Carnes v. White*, 511 P.2d 1101, 1106 (Okla. 1973).

[9] Plaintiff's argument that Ms. Bray should have consulted an accident reconstructionist is based solely on Defendant's internal documents regarding claims handling and adjustment procedures, and the opinion of Plaintiff's own reconstructionist. *See* Pl.'s Am. Resp. Br. [Doc. No. 84] at 21 n.13. The cited provisions of Defendant's materials are inapposite to the circumstances of this case.

determined from the limited facts available, and they demonstrate that a more thorough investigation by Defendant before it denied Plaintiff's UM claim would not have altered its coverage decision.

In short, the record makes clear that a legitimate dispute exists regarding the availability of UM coverage under the facts presented.[10] The Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact that would preclude summary judgment on his bad faith claim.

## Conclusion

For these reasons, the Court finds that Plaintiff has demonstrated a genuine dispute of material facts with regard to his breach of contract claim, but that Defendant is entitled to summary judgment on Plaintiff's tort claim of insurer's bad faith.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 65] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 17th day of May, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff argues that the existence of a legitimate dispute is not dispositive where an insurer manufactures a dispute or changes its position after denying coverage. *See* Pl.'s Am. Resp. Br. [Doc. No. 88] at 29-30 (discussing *Haberman v. Hartford Ins. Group*, 4443 F.3d 1257, 1270 (10th Cir. 2006)). However, this argument is misplaced; the record facts do not establish a change of position by Defendant. From the first denial letter until now, Defendant has maintained that Plaintiff's loss did not "meet the definition of a UM claim" and that Plaintiff's own negligence caused the accident. *See* Pl.'s Ex. 5 [Doc. No. 75-7], Bray letter dated 12/22/10; Pl.'s Ex. 7 [Doc. No. 75-9], Bray letter dated 1/6/11; Pl.'s Ex. 8 [Doc. No. 75-10], Bray letter dated 1/18/11; Pl.'s Ex. 21 [Doc. No. 75-23], GEICO's Mot. Summ. J. filed 9/19/11. Further, Plaintiff incorrectly contends Defendant relies on legal arguments first asserted during litigation; Defendant's privilege log indicates that the adjuster, Ms. Bray, consulted counsel before denying the UM claim.