FILED
United States Court of Appeals
Tenth Circuit

February 19, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEFFREY SEMLER,

    Plaintiff - Appellant/Cross-Appellee,

v.

GEICO GENERAL INSURANCE COMPANY,

    Defendant - Appellee/Cross-Appellant.

Nos. 14-6071 & 14-6082

(D.C. No. 5:11-CV-01354-D)
(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **MURPHY** and **MATHESON**, Circuit Judges.

---

This diversity action arises out of an uninsured motorist coverage dispute between Defendant GEICO General Insurance Company (GEICO) and Plaintiff Jeffrey Semler (Semler). Semler claimed GEICO breached its insurance contract with him, and also violated its duty of good faith and fair dealing. Semler appeals from the district court's grant of partial summary judgment to GEICO on his bad faith claim. GEICO, in its cross-appeal, challenges the district court's partial denial of its summary judgment motion on

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Semler's breach of contract claim, as well as the district court's denial of its motion for a new trial. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

I

*1. The Accident*

On August 25, 2010, at approximately 11:00 p.m., Semler was driving his Ford Expedition eastbound in the right-hand lane on Highway 3 in Canadian County, Oklahoma. Semler's wife was driving behind him in a separate vehicle. It was a clear night and Semler was driving the speed limit. He was also using his highbeams. As he was driving, Semler noticed a large tire tread in his lane, which looked to him like a tread from an 18-wheeler. He was approximately 90 feet from the tire tread when he noticed it. Semler tried to avoid it by swerving to the right. But he was unable to clear his lane in time and struck the tread. Semler lost of control of his vehicle and collided with the wall of a concrete bridge. He broke his thumb and injured his back in the accident.

David Craig, who lived close to the accident site, went out to see what had happened after his wife noticed the collision. Craig confirmed that Semler had hit a tire tread from a semi-truck. He also stated that he had not seen the tread in the roadway when he had driven on the highway several hours earlier.

Oklahoma Highway Patrol Trooper Dallas Edwards arrived at the accident site a short time later. Trooper Edwards also confirmed that Semler had hit a tire tread from a semi-truck. After Trooper Edwards arrived, David Craig removed the tire tread from the roadway and discarded it. Like Craig, Trooper Edwards had driven on this same portion

of highway about thirty minutes earlier and had not seen the tread in the roadway. Trooper Edwards stated that he thought the tread was large enough to have thrown Semler's "vehicle off a little bit especially with [Semler] trying to swerve because there's not much room on that bridge." Aplt. App. at 1480-81. He concluded that the accident would not have occurred had the tire tread not been in the road.

   *2. Insurance Claim*

   At the time of the accident, Semler was insured under a policy issued by GEICO, which provided uninsured motorist benefits of up to $100,000 per person. Semler's policy provided protection in the event Semler was involved in an accident with an "uninsured motor vehicle" or a "hit-and-run motor vehicle" if his injuries "ar[ose] out of the ownership, maintenance or use" of that vehicle, and if he was "legally entitled to recover from the owner or operator" of that vehicle. Id. at 1572. The policy defined "hit-and-run motor vehicle," as "a motor vehicle causing bodily injury to an insured, and whose owner or operator cannot be identified . . . ." Id. at 1571 (emphasis in original omitted).

   Semler reported the accident to GEICO on August 27, 2010. Three days later GEICO noted in its activity log: "Single Veh[icle] loss. No [Bodily Injury] Or Um Exposure. Appears To Be At Fault Loss." Id. at 1182. On September 14, 2010, Semler, through counsel, submitted a claim for uninsured motorist benefits. A few weeks later, GEICO's activity log was updated to indicate that Semler had hit "tire debris" in the roadway and that he had collided with a "barrier." The activity log also questioned

3

whether Semler's accident qualified for uninsured motorist benefits. Two GEICO employees then reviewed Semler's policy. After they did so, the activity log was updated with the following: "Revd File/Policy Contract . . . Tire In Road Does Not Meet Def Of Uninsured Motorist Def Or Losses We Will Pay. Um Coverage Would Not Apply." Id. at 1175. GEICO then assigned the claim to employee Elizabeth Bray for investigation.

On December 20, 2010, Semler provided GEICO with a statement. Bray reviewed Semler's statement and contacted GEICO's counsel to discuss the loss. After doing so, Bray wrote to Semler's attorney, John Branum, informing him that "[b]ased on the information that [she] ha[d] to date, it does not appear that this loss meets the definition of an uninsured motorist claim." Id. at 1446. Bray also asked about the accident report, which Semler had mentioned in his statement, but which Bray had not been able to locate.

Branum wrote back to Bray, asking her why she did not believe that Semler's loss met the definition of an uninsured motorist claim. Bray responded, explaining that because Semler "was at fault in this loss for failing to maintain control of his vehicle," Semler "would not be entitled to make an uninsured motorist claim under the policy." Id. at 1451. Branum then sent Bray the report Trooper Edwards had prepared.

On January 26, 2011, Branum wrote Bray again asking her for the information she had obtained which led her to believe the accident was Semler's fault. A couple weeks later, Branum wrote Bray yet again to inform her that he had spoken with David Craig. He shared with her the information he had learned from Craig and stated that, with the information Craig provided, "it is more likely true than not that this incident was caused

4

due to the negligent maintenance of a motor vehicle." Id. at 1459. Bray then wrote back to Branum. She stated that her liability decision was based on Semler's statement, and that she had taken a statement from Craig, but that it did not change GEICO's position.

The next correspondence occurred on April 19, 2011, when Branum sent Bray another letter asking Bray to explain what it was in Semler's statement that had led to the denial of his claim. Receiving no response from Bray, Branum wrote Bray one last time on June 6, 2011. Branum enclosed a copy of the statements he had taken from Trooper Edwards and Craig, and informed Bray that if GEICO did not offer to pay its policy limits within 10 days, he would initiate legal proceedings.

*3. Litigation*

On June 27, 2011, GEICO filed a declaratory judgment petition, in which it argued that Semler's accident was not covered under his uninsured motorist policy because a tire tread is not an uninsured motor vehicle, and even if it were, Semler could not demonstrate that his injury arose out of the ownership, maintenance or use of an uninsured vehicle. But GEICO voluntarily dismissed its declaratory judgment petition a few months later.

Semler then filed the present lawsuit against GEICO in Oklahoma state court on October 28, 2011, alleging that GEICO breached both its insurance contract with respect to Semler's uninsured motorist policy, and its duty of good faith and fair dealing in denying Semler's claim. GEICO removed the case to federal court, answered Semler's complaint, and filed a counterclaim for declaratory judgment.

GEICO then moved for summary judgment. GEICO argued it was entitled to

5

Appellate Case: 14-6071 Document: 01019387517 Date Filed: 02/19/2015 Page: 6

summary judgment because (1) the tread in the roadway was an ordinary road hazard and, without some evidence linking the tread to a negligent owner or operator of a vehicle, the tread did not constitute an uninsured or a hit-and-run motor vehicle, (2) Semler's injury did not arise out of the ownership, maintenance or use of such a vehicle, and (3) Semler was the primary cause of and principally at fault for the accident.

The district court denied GEICO's motion for summary judgment on Semler's breach of contract claim, finding that even though "it is undisputed that the owner or operator allegedly responsible for leaving tire debris in the roadway remains unknown," Aplt. App. at 1055, Semler "made a minimally sufficient showing to support his theory that the negligence of an unidentified truck driver caused the accident" and that he "might [be] entitle[d] . . . to UM coverage." Id. at 1057-58. The district court, however, granted GEICO's motion on Semler's bad faith claim, finding that "the evidence . . . clearly establishes the existence of a legitimate dispute regarding [Semler's] entitlement to UM coverage, thereby precluding a finding of bad faith by [GEICO]." Id. at 1058.

Semler's contract claim was then tried before a jury. At the conclusion of Semler's case in chief, GEICO moved under Fed. R. Civ. P. 50(a) for judgment as a matter of law, advancing similar arguments to those made in its summary judgment motion. The district court denied the motion. GEICO never renewed the motion pursuant to Fed. R. Civ. P. 50(b) following the jury verdict.

During closing arguments, Semler's counsel made two comments about GEICO's wealth. GEICO's counsel objected after GEICO's wealth was referenced for the second

time. The district court sustained the objection and promptly gave the jury the following instruction: "Ladies and gentlemen of the jury, what counsel say in closing argument is not evidence. It's what counsel believes the evidence shows. You're not bound by what counsel says in closing argument." Supp. App. at 450. After Semler's counsel completed his closing arguments, GEICO's counsel objected again to the comments made about GEICO's wealth. The district court responded: "With respect to the comments about the financial position of [GEICO], you're right. You objected and I sustained it and I told the jury that it wasn't evidence, and I think I appropriately handled that issue." Supp. App. at 462. Although GEICO did not explicitly move for a mistrial, both parties seem to agree that GEICO did so implicitly with its second objection. See Aplee. Br. at 38; Aplt. Reply Br. at 18-19. Like the parties, we will treat this exchange between GEICO and the court as a motion for mistrial which was denied. The jury ultimately found in favor of Semler, awarding him $210,000 in damages. It did not find any fault on Semler's part. Judgment was entered on the jury award in the amount of the contract, $100,000.

Both parties now appeal. Semler appeals the district court's grant of summary judgment to GEICO on his bad faith claim, and GEICO appeals the district court's denial of its summary judgment motion on Semler's breach of contract claim, as well as the district court's denial of its motion for a mistrial. We turn first to Semler's appeal.

## II

### 1. Bad Faith Claim

On appeal, Semler challenges the district court's decision to grant summary

judgment in favor of GEICO on his bad faith claim. "We review summary judgment decisions de novo, applying the same standards employed by the trial court under Fed. R. Civ. P. 56(c)." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir. 1991). "Summary judgment is proper only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1277 (10th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). "We view the record in the light most favorable to the nonmoving party," which in this case is Semler. Russillo, 935 F.2d at 1170. Moreover, "we may affirm on any basis supported by the record." Richison v. Ernest Group, Inc., 634 F.3d 1123, 1130 (10th Cir. 2011).

Under Oklahoma law, "'an insurer has an implied duty to deal fairly and act in good faith with its insured . . . .'" Davis v. Mid-Century Ins. Co., 311 F.3d 1250, 1252 (10th Cir. 2002) (quoting Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977)). This duty will only create a claim against an insurer if "there is a clear showing that the insurer unreasonably, and in bad faith, withh[e]ld[] payment of the claim." McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981) (internal quotation marks omitted). "'[T]he tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute.'" Davis, 311 F.3d at 1252 (quoting Skinner v. John Deere Ins. Co., 998 P.2d 1219, 1223 (Okla. 2000)). "The decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." Porter v. Okla. Farm Bureau Mut. Ins. Co., 330 P.3d 511, 518 (Okla.

8

2014) (internal quotation marks and emphasis omitted).  In this case, GEICO did.

At the time Semler requested performance by GEICO, a legitimate dispute existed over whether Semler's claim qualified for uninsured motorist coverage.[1]  "There is no bad faith when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured."  Claborn v. Washington Nat'l Ins. Co., 910 P.2d 1046, 1051 (Okla. 1996).  And "'[a]n insurer clearly has the right to . . . litigate any claim to which the insurer has a reasonable defense.'"  Id. (citing Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1106 (Okla. 1991)).  GEICO denied Semler's claim based primarily on its belief that Semler was entirely at fault for the accident.  Under Oklahoma law, uninsured motorist coverage is only triggered if the insured is entitled to recover from a negligent tortfeasor.  See Ply v. Nat'l Union Fire Ins. Co., 81 P.3d 643, 648 (Okla. 2003); Okla. Stat. Ann. tit. 36, § 3636.  If Semler was entirely at fault, he would not be entitled to recover from a negligent tortfeasor or to receive uninsured motorist benefits.  Under the facts of this case, it was not unreasonable for GEICO to rely on this defense, as a jury could find that even though Semler was driving the speed limit with his highbeams on, his failing to notice the tread until he was only 90 feet away from it indicated that he was driving negligently.  Accordingly, GEICO did not act in bad faith in litigating this issue.

GEICO also consistently maintained that it was denying Semler's claim because

---

[1] This remains the case regardless of whether, as Semler argues, GEICO is considered to only have investigated the claim from August 2010 (when Semler informed GEICO of the accident) to June 2011 (when GEICO filed its first declaratory judgment petition).  Even if we assume that Semler is correct, GEICO still prevails.  As discussed below, GEICO legitimately disputed Semler's claim well before the start of any litigation.

his loss did not meet the definition of an uninsured motorist claim.² See Aplt. App. at 1175, 1446, and 1450. GEICO noted early on in its activity log that it did not believe a tire in the roadway meets the definition of an uninsured motorist claim; id. at 1175, and Elizabeth Bray, who was in charge of investigating this claim for GEICO, repeatedly told John Branum, Semler's counsel, the same thing—that GEICO was withholding payment because it did "not feel that this loss meets the definition of an uninsured motorist claim." Id. at 1450. Again, GEICO did not act in bad faith in litigating this issue. At the time GEICO was investigating Semler's claim, no conclusive legal authority existed addressing whether an accident involving a tire tread in the roadway qualifies for uninsured motorist coverage in Oklahoma. Semler even concedes this point. "For bad faith liability to attach, the law at the time of the alleged bad faith must be settled." Davis, 311 F.3d at 1252. Without any legal authority on point, it can hardly be said that the law at the time was settled. Thus, it was not unreasonable for GEICO to challenge the unique circumstances of Semler's accident and to dispute whether Semler's accident was

---

² Semler argues that GEICO should be prevented from relying on this defense because GEICO merely manufactured it after the fact for litigation purposes. Aplt. Br. at 17. But this is not the case. GEICO noted this issue in its activity log at the very beginning. See Aplt. App. at 1175. It also indicated in its initial letter to Semler that it was denying his claim because it did not meet the definition of an uninsured motorist claim. Id. at 1446. This all occurred before the start of any litigation. And while we recognize that GEICO's communications with Semler emphasized its belief that Semler was at fault for the accident, GEICO's noting this coverage dispute in its activity log is sufficient to allow it to rely on this defense. Cf. Buzzard, 824 P.2d at 1109-10 (finding that an insurer could not defend its bad faith claim on a basis that it did not "*internally note[]*" or "communicate[] to [its insured] as a reason for delay or denial of the claim") (emphasis added).

in fact caused by a negligent driver who lost the tread and then left it in the roadway. See Porter, 330 P.3d at 518 ("It is not bad faith to withhold payment when there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage."); see also Biggs v. State Farm Mut. Auto. Ins. Co., 569 P.2d 430, 433-34 (Okla. 1977) (explaining that even though Oklahoma does not require physical contact between the insured's vehicle and the hit-and-run vehicle for uninsured motorist coverage to apply, the insured still must prove "that the accident was in fact caused by an unidentified driver").

Semler goes on to argue that even if a legitimate dispute existed at the time GEICO withheld payment on his claim, GEICO still acted in bad faith by inadequately investigating his claim. "[W]hen presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances . . . ." Newport v. USAA, 11 P.3d 190, 195 (Okla. 2000) (internal quotation marks omitted). Where a bad faith claim is based on an inadequate investigation theory, "the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335, 345 (10th Cir. 1995); see also Bannister v. State Farm Mut. Auto Ins. Co., 692 F.3d 1117, 1131 (10th Cir. 2012). Semler has failed to do this.

Once Semler filed his claim, GEICO investigated it. GEICO promptly took Semler's statement. Semler told GEICO that this was a single vehicle accident and that his wife was the only other person to witness the accident. Semler also indicated that he

11

did not know how the tire tread got into the roadway or what vehicle may have left it there.  Id.  GEICO had no reason to suspect the information it had received from Semler was incorrect or incomplete.  GEICO also had every right to rely on that information, including the fact that no eyewitness testimony would be available to establish how the tire tread got into the roadway, who deposited it there, or whether it was left there as a result of another driver's negligence.  See Bannister, 692 F.3d at 1131-32.

   Moreover, there is simply no indication that any additional investigation would have changed the underlying facts already known to GEICO.  See id. at 1131.  The tire tread was discarded shortly after the accident; therefore no analysis could have been performed on the tread itself.  GEICO had already spoken with David Craig—the only other person present at the scene—and had also obtained a copy of Trooper Edwards's contact report.  But neither Craig's statement nor Trooper Edwards's report provided GEICO with any new or relevant information about the accident that GEICO had not already learned from Semler.  And Semler identifies no other relevant witnesses or facts that GEICO could have uncovered to assist it in its investigation.  Without some indication by Semler that "a more thorough investigation would have produced relevant information that would have delegitimized the insurer's dispute of the claim," id. at 1132 (internal quotation marks omitted), Semler's inadequate investigation theory fails.  Under Oklahoma law, an insurer's investigation does not need to be perfect; it only needs to be "reasonably appropriate under the circumstances."  Buzzard, 824 P.2d at 1109.  In this case, it was.  Accordingly, the district court properly granted summary judgment in favor

of GEICO on Semler's bad faith claim.

*2. Breach of Contract Claim*

GEICO, in its cross-appeal, first challenges the district court's denial of its summary judgment motion on Semler's breach of contract claim. However, this argument is not properly before us. When a summary judgment motion is denied based on factual disputes, it is "not properly reviewable on an appeal from a final judgment entered after trial." Haberman v. The Hartford Ins. Group, 443 F.3d 1257, 1264 (10th Cir. 2006). Instead, the proper redress is "through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied." Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251 (10th Cir. 1992). We have, however, noted one exception. When a summary judgment motion is denied based on a purely legal issue, that issue can be reviewed on appeal after final judgment. See Haberman, 443 F.3d at 1264. But we are not presented with such an issue in this case.

In its summary judgment motion, GEICO challenged only whether Semler could establish two of the four elements required for an uninsured motorist claim under Oklahoma law—(1) that his injury arose out of the maintenance or use of a motor vehicle and (2) that he is legally entitled to recover damages from a hit-and-run motorist.[3] See Aplee. Br. at 35. Both of these elements implicate factual issues. Under Oklahoma law,

---

[3] In addition to these two elements, Oklahoma requires a plaintiff to establish that (1) he "is an insured under the UM provisions of a policy," and (2) that his injury was "caused by an accident" in order for the plaintiff to be entitled to uninsured motorist coverage. Ply, 81 P.3d at 647. Neither of these two elements is in dispute in this case.

for a plaintiff to prove that his injury arose out of the maintenance or use of a motor vehicle, he must show that "a motor vehicle or any part of the motor vehicle [was] the dangerous instrument which start[ed] the chain of events leading to [his] injury," Safeco Ins. Co. of Am. v. Sanders, 803 P.2d 688, 692 (Okla. 1990), and that his injury was "causally connected" to the hit-and-run vehicle. Ply, 81 P.3d at 647 n.7. For a plaintiff to prove he is legally entitled to recover from a hit-and-run motorist, he must show that his injury was caused by a negligent hit-and-run motorist. Id. at 648. These issues present factual disputes, not purely legal questions. See Safeco Ins. Co. of Am., 803 P.2d at 693; Flanders v. Crane Co., 693 P.2d 602, 606 (Okla. 1984) (noting that "questions concerning negligence . . . are for the trier of fact"); Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1322 (Okla. 1996) (noting that whether something is the proximate cause of a plaintiff's injury is a fact question). Indeed, the district court made clear that it was denying GEICO's motion for summary judgment on Semler's breach of contract claim because there were genuine disputes of material fact regarding both elements.

Because GEICO was denied summary judgment based on factual rather than purely legal issues, we may not review that denial on appeal.[4] See Copar Pumice Co.,

---

[4] GEICO attempts to frame the issue on summary judgment as a purely legal issue by arguing that the district court erred "in finding a tire fragment could constitute a 'hit-and-run motor vehicle'" under GEICO's policy. Aplee. Br. at 35. But GEICO misstates the relevant issue. The relevant issue is not whether a tire tread constitutes a hit-and-run motor vehicle, but rather whether the accident was actually caused by a hit-and-run motor vehicle. See Biggs, 569 P.2d at 433-34. That is how the district court framed the issue, and it is also how the cases upon which GEICO relies framed the issue. See Kersten v. Detroit Auto. Inter-Ins. Exch., 267 N.W.2d 425, 431 (Mich. Ct. App. 1978) (analyzing
(continued...)

Inc. v. Morris, 639 F.3d 1025, 1032 (10th Cir. 2011). After GEICO's summary judgment motion was denied and the contract issue went to trial, GEICO's counsel could have renewed its summary judgment arguments in a Rule 50(a) and a Rule 50(b) motion for judgment as a matter of law, and then appealed from the denial of those motions.[5] See id.; Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 404 (2006). However, given the procedural posture of the case, we cannot now review the district court's denial of GEICO's summary judgment motion on the contract claim.

*3. Motion for a Mistrial*

GEICO's final challenge on appeal is that the district court erred by denying its motion for a mistrial based on two comments made by Semler's counsel about GEICO's wealth during closing arguments. GEICO contends that these comments were "highly

---

[4](...continued)
whether a tire tread in the roadway could provide the necessary connection between plaintiff's vehicle and a hit-and-run vehicle to show that a hit-and-run vehicle caused plaintiff's accident); Bingenheimer v. State Farm Mut. Auto. Ins. Co., 100 P.3d 1132, 1134-35 (Or. Ct. App. 2004) (analyzing whether the existence of a foreign substance on the road could support an inference that a phantom driver's negligence caused the substance to be there); Tuttle v. Allstate Ins. Co., 138 P.3d 1107, 1112 (Wash. Ct. App. 2006) (similar).

[5] We note that GEICO did move at trial for judgment as a matter of law under Fed. R. Civ. P. 50(a) after Semler's case-in-chief. But GEICO did not renew the motion by filing a Fed. R. Civ. P. 50(b) motion after the jury verdict. GEICO's "failure to comply with Rule 50(b) forecloses its challenge to the sufficiency of the evidence." Unitherm Food Sys., Inc., 546 U.S. 394, 404 (2006). Thus, even if GEICO had properly appealed the denial of its Rule 50(a) motion, which it did not, its challenge to the sufficiency of the evidence would still be waived. The cases upon which GEICO relies to suggest that a Rule 50(a) motion is all that is required, see e.g., Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515 (10th Cir. 1997), were decided prior to the Supreme Court's decision in Unitherm Food Sys., Inc. and are inapplicable.

inflammatory," done to "create prejudice in the minds of the jury," and are sufficient to require us to reverse and remand for a new trial. Aplee. Br. at 62. We disagree.

"We review [a] district court's denial of a motion for mistrial for abuse of discretion." Rios v. Bigler, 67 F.3d 1543, 1550 (10th Cir. 1995). "'In deciding whether the court abused its discretion, we assume that the trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial.'" Id. (quoting Raybestos Prods. Co. v. Younger, 54 F.3d 1234, 1239 (7th Cir. 1995)).

When "reviewing the issue of improper closing argument, we . . . exercise[] great caution in setting aside a judgment because of such remarks." Lambert v. Midwest City Mem'l Hosp. Auth., 671 F.2d 372, 375 (10th Cir. 1982). "Mistrial is not justified if an affirmative direction to disregard is issued to the jury and it does not clearly appear that the challenged remarks influenced the verdict." Orjias v. Stevenson, 31 F.3d 995, 1006 (10th Cir. 1994). However, reversible error "does occur when counsel's closing remarks introduce extraneous matter which has a reasonable probability of influencing the jury." Lambert, 671 F.2d at 375.

While it was improper for Semler's counsel to bring up GEICO's wealth, see Garcia v. Sam Tanksley Trucking, Inc., 708 F.2d 519, 522 (10th Cir. 1983), reversal is not required in this case because the statements did not constitute prejudicial error. Id.; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240 (1940). These remarks were "minor aberrations" made in passing; they were "not cumulative evidence of a proceeding dominated by passion and prejudice." Socony-Vacuum Oil Co., 310 U.S. at 240.

Semler's counsel did not overemphasize GEICO's wealth, nor did he linger on it. Rather, he brought it up in passing as he challenged the credibility and veracity of GEICO's witnesses. We have consistently held that "only where counsel truly overemphasizes an improper argument will we find the requisite prejudice and order a new trial." King v. PA Consulting Group, Inc., 485 F.3d 577, 591 (10th Cir. 2007) (citing Smith v. Atl. Richfield Co., 814 F.2d 1481, 1488 (10th Cir. 1987)); see also Whittenburg v. Werner Enterprises Inc., 561 F.3d 1122, 1131 (10th Cir. 2009). Because there was no such overemphasis here, the district court did not abuse its discretion in denying GEICO's motion for a new trial.

Moreover, the district court issued a curative instruction immediately after GEICO's objection. Curative instructions that are "issued promptly after the improper argument" and that "specifically address[] the precise impropriety complained of . . . can go far in erasing prejudice occasioned by an improper remark." Whittenburg, 561 F.3d at 1131. And even though the curative instruction in this case was merely a general instruction reminding the jury that counsel's arguments were not evidence, general instructions can still help mitigate the influence of an improper closing argument, especially where, as here, the improper statements were minor and the curative instruction was issued promptly after an objection was made. Id.; United States v. Roberts, 185 F.3d 1125, 1144 (10th Cir. 1999).

Finally, the jury's finding that Semler was not at fault for the accident does not, as GEICO suggests, demonstrate prejudice sufficient to warrant a new trial. Although

Semler's own expert did testify that "a combination of both" the tire tread and Semler's driving "probably" caused Semler's SUV to go into the bridge, see Supp. App. at 190, that fact alone does not indicate that the jury's verdict was improper or the result of prejudice. There was ample evidence presented to the jury to support its finding that Semler was not negligent, including that it was dark at the time of the accident, that Semler had a short amount of time to react, and that a driver's natural response to seeing an object in the road is to swerve to avoid it. And the jury certainly could have decided to give minimal to no weight to the testimony of Semler's expert. See United States v. Oliver, 278 F.3d 1035, 1043 (10th Cir. 2001) (noting that "it is solely within the province of the jury, to weigh this expert testimony" (internal quotation marks omitted)); Boxberger v. Martin, 552 P.2d 370, 375 (Okla. 1976). Accordingly, the district court did not abuse its discretion in denying GEICO's motion for a mistrial.

## III

For the foregoing reasons, we AFFIRM the district court.

Entered for the Court

Mary Beck Briscoe
Chief Judge